### Perley E. Tracy v. Massachusetts Bonding & Insurance Co.

[159 A.2d 86]

January Term, 1960

resent: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed March 2, 1960

*Theriault & Joslin* for the defendant.

*Harvey B. Otterman, Jr.* for the plaintiff.

**Hulburd, C. J.** The plaintiff seeks to recover on a health-accident insurance policy. The defendant insurer has already paid the plaintiff for one month's total disability. The plaintiff claims for eleven months more. At the trial below, the court found the plaintiff, a farmer, was the holder of a policy issued by the defendant, which provided, among other things, for an occupational accident monthly indemnity in the amount of $100.00 a month, beginning with the first day of disability but not exceeding twelve consecutive months. Under Part III of the policy, which deals with total disability, the contract, having set forth the company's undertaking with respect to a "non-occupational accident," then proceeds to specify its liability in case of an "Occupational Accident" in these words:

"Or, if such injuries arising out of or in the course of any employment for compensation, profit or gain shall, within twenty days after the date of accident, wholly and continuously disable the Insured and prevent him from performing any and every duty pertaining to his occupation and he is under the regular treatment of a physician, the Company shall pay for the period of such continuous total disability Occupational Accident Monthly Indemnity at the rate and within the limits specified in the Schedule of Indemnities."

This was the policy which was issued to the plaintiff in January 1955 and was the policy which was in force on May 8, 1958 when the plaintiff went to fix a fence on his farm. While doing so, he fell forcibly "on the seat of his pants." He experienced no serious results immediately after the fall and finished the day's work, but the next day he had severe pain in his back and legs. Since that date right down to the date of hearing below, the plaintiff had intermittent pain in his back

and legs and was unable to carry on his occupation of farming or, for that matter, any gainful occupation for which he was qualified. On May 17 the plaintiff saw an osteopath, Dr. Keating, for two treatments. Subsequently, he went to Dr. Gage, a chiropractor whom he saw two or three times a week for a total of twenty-two times by July 11th of the same year. Following that he consulted Dr. Rust, an orthopedic physician and surgeon. Under his care the plaintiff was confined in the Mary Fletcher Hospital for twenty-four days, on a complete "bed-rest" regimen.

In addition to the foregoing, the court below went on to find the following facts about the plaintiff.

"6. While in Mary Fletcher Hospital he was fitted to a brace which it is necessary to wear all the time and which he was wearing at the time of hearing.

"7. After the hospitalization period and for a reasonable time thereafter he has seen Dr. Rust once a month except for the last two months when the interval has stretched to six weeks.

"8. The plaintiff indicated that he had been informed and advised that his trouble was a rupture of the disc between the fourth and fifth vertebrae in the lumbar region. There was some indication of the necessity of an operation to remove the ruptured disc but Dr. Rust apparently felt that because of the age of the plaintiff the operation should not be done. The Court finds, however, that even if an operation had been done that the plaintiff would have been incapacitated for more than a twelve month period which is the maximum period recoverable under the policy as hereinafter set forth.

"12. The plaintiff has been wholly and continuously disabled since May 8, 1958 from performing any and every duty pertaining to his occupation and he is under the regular treatment of a physician and said disablement arose from injuries out of or in the course of employment for compensation, profit or gain."

The defendant excepted to findings 6, 7, 8 and 12, just quoted, on a group basis, on the ground that they are not supported by the evidence "for the reason that there is no

medical testimony in the case to support such findings." The defendant takes the position that there must be expert testimony to support a finding of : (1) injury and (2) that the accident was the cause of the claimed injury.

In support of its contention the defendant has cited a number of cases. They require classification before analysis. We can at once narrow down their number by pointing out that such cases as *Ryder* v. *Vermont Last Block Co.*, 91 Vt. 158, 167, 99 A. 733 and *Howley* v. *Kantor*, 105 Vt. 128, 133, 163 A. 628, stand for the proposition that medical testimony is essential on the question of *future* damages. That question we do not have here.

■ The period for which recovery is sought has already elapsed. Prognosis is not our problem. To establish the future duration of a plaintiff's disability quite naturally required expert opinion. Where a plaintiff's present condition only is in issue we are not reduced to the necessity of relying on medical opinion alone. This point is made plain by *LeClair* v. *Montpelier & Wells River R. R.*, 93 Vt. 92, at page 97, 106 A. 587, 590, where the Court says: "Here the question is whether there was any evidence that would warrant the jury in finding that a present condition shown by evidence to exist was the result of the accident. To establish the basis of such an inference it would not necessarily require the testimony of medical witnesses that the particular trouble was attributable to the accident."

The Court goes on to say: "However, the causal connection might in some cases be so obscure as to require such testimony to remove the inference from the realm of speculation." Examples of the latter situation may be found in *Laird* v. *State of Vt. Highway Dept.*, 110 Vt. 195, 3 A.2d 552, in which the question was whether in the circumstances of that particular case a cerebral hemorrhage could be said to have been brought on by the mere exertion of doing certain work; or, in *Burton* v. *Holden & Martin Lumber Co.* 112 Vt. 17, 20 A.2d 99, 135 A. L. R. 512, where the question was whether a sliver in the thumb could be found to have caused a man to die of cerebral thrombosis.

■ We do not have in our present case one involving such obscure or far-fetched causation. Here is a man who fell on his lower back, and thereafter, commencing next day, suffered great pain in the same area. The disability followed the injury closely and was of a nature which tended to suggest to the intelligence of the ordinary person that it was related to the fall. To paraphrase the language of *Cropper* v. *Titanium Pigment Co.*, 47 F.2d 1038, 78 A. L. R. 737, even in the absence of expert testimony, the evidence was such as to have a tendency to prove to the lay mind a relation of cause and effect. This was all that was needed in a case of this sort.

The evidence was not, however, completely destitute of implications of medical testimony. The defendant itself drew out of the plaintiff on cross-examination that Dr. Gage had informed him that he had injured his back and later that Dr. Rust had told the plaintiff his injury was a ruptured disc.

Finally, we are somewhat perplexed as to why the defendant presses the point he does at all. There stands on the record the unchallenged finding that since the day after the fall the plaintiff "has had intermittent pain in his back and legs and has been unable to carry on his occupation of farming or for that matter to carry on any gainful occupation for which he is qualified." Bearing in mind that the policy in question was a health as well as an accident policy and that the benefits were identical, whether the claim arose by reason of health or by reason of accident, except that benefits started on the 1st day of accidental disability instead of the 8th day in case of sickness (neither of which periods are material here since the first month's disability has already been settled for)— bearing all this in mind—we do not see how the defendant could be harmed by being required to pay under its policy. Once the disability is shown,—and it has been,—its cause, whether from sickness or accident, loses all significance. The plaintiff brought his action on the accident theory, as well he might. We think his proof is sufficient.

*Judgment affirmed.*