## AARON BURR v. EZRA B. PALMER.

*New trial. Ex parte affidavits. Surprise. New discovered evidence. Costs. Practice.*

Testimony, by way of *ex parte* affidavits, to meet the testimony taken in support of a petition for a new trial, has always been regarded by the court as loose and unsatisfactory, and as not coming within any known rule of practice of the court. Yet previous to the promulgation of the rule of court adopted in 1851, [22 Vt. 670,] such testimony has been always received,—giving to the other party an election to have his case continued, to rebut the evidence.

In order to entitle a party to a new trial, upon the ground of surprise, it must not have been the fault of the party, that he was surprised.

New discovered evidence, in order to entitle a party to a new trial, should ordinarily be upon some point not raised at the trial, so as not to come fairly within the denomination of merely cumulative evidence ; or, if so, it must, at the least, be of such a character, as *prima facie* to raise a strong probability, that it will be decisive of the case.

Upon the hearing of a petition for a new trial it is not necessary to furnish the court with copies of the affidavits, or depositions.

Rule for taxing costs in favor of the recovering party upon a petition for a new trial.

PETITION for a new trial. The facts are sufficiently stated in the opinion of the court, which was delivered by

REDFIELD, J. This is a petition for a new trial, on the ground of surprise at the trial and newly discovered evidence. The petitionees have put into the case a large amount of counter evidence, in the form of *ex parte* affidavits. This testimony was objected to at the time it was offered, and is said, in argument, to be a loose and indecisive and unsatisfactory mode of encountering a case once made out upon a petition for a new trial. The court, I think, fully concur in all that has been said, or that can be said, against the propriety of receiving such evidence. But although it has been repeatedly said by the court, that such evidence does not come within any known rule of practice of the court, and in strictness ought not to be received, yet many times, on almost every circuit, such evi-

dence is pressed upon the court, in this class of cases, and has been always received, giving the other party an election to have his case continued to rebut the evidence.[*]

In regard to the merits of this application, to view the case as presented by the petitioners, there are certain pre-requisites to be made out on his part.

1. In regard to the surprise, it must be one, which is not his own fault. In the present case, it seems to us the defendant in the action was bound to know, when the copy of the declaration was first served upon him, that the plaintiff would *attempt* to show, that his mill was flowed *more*, than it had been before the defendant built his new mill. This is, as we understand the case, the very *gist* of the plaintiff's action, the *gravamen* of his complaint, the very and the only ground, upon which he claimed damages of the defendant. The most natural inquiry, then, for the defendant to have made, in preparing for the first trial, was, to find witnesses to show, that the water did not in fact flow back upon the plaintiff's mill more, than before the division between them,—and to that extent he had secured the right to flow the water back, by the deeds of partition.

And when, from the minutes of the first trial in the case, we learn, that this was made a point of *direct* proof, and that evidence, direct and indirect, was introduced by the plaintiff upon that trial, for the express purpose of establishing that point, we can hardly suppose the defendant could be surprised by the plaintiff's introducing evidence upon that point, and attempting to establish it, by direct evidence. He might be surprised at the extent, or the character, or the sources of his evidence, but he had no right, we think, to be surprised, that he should give evidence upon that point;—nor do we find any thing in the source or character of the plaintiff's evidence upon this point calculated to create surprise.

We think, therefore, that the defendant, before the last trial, was fairly put upon inquiry, to find evidence upon this point; and we really do not see, why he would not naturally have looked at that time, for evidence, in the place where he found it, or why he might not have had much of this evidence before the last trial.

---

[*] A rule has since been adopted by the court, in reference to the taking of testimony upon petitions for new trials. 22 Vt. 670.

2. In addition to all this, the newly discovered evidence should ordinarily be upon some point, not raised at the trial, so as not to come fairly within the denomination of merely cumulative evidence; or, if so, it must, at the least, be of such a character, as *prima facie* to raise a strong probability, that it will be decisive of the case.

The evidence in the present case is no doubt of a character, which would very considerably aid the defence, and render the success of the plaintiff far more difficult and doubtful. For although the plaintiff very ingeniously parries the blow, by saying, that the defendant's witnesses, who are fairly reliable, refer to high water, and not to back water, yet this answer cuts both ways. For if the defendant's testimony, upon this point, is explainable in this way, how can it be said, with certainty, that the plaintiff's evidence, also, may not be explained in the same way ?

But it does not seem to us, that the testimony, although important, can be said not fairly to come within the denomination of cumulative evidence, or that it is at all decisive of the case. There is perhaps no class of cases, where evidence is so likely to increase from term to term, until the case is finally disposed of, or where new evidence would be so likely to be fairly discovered, after the final trial in the case, as in cases for obstructing water courses, and flowing lands and mills. And there is surely no other class of cases, where the tests, upon the one side and the other, are likely to be so numerous, or so decisive, as in this class, as the present case abundantly shows,—so that each successive accretion becomes comparatively of proportionally less importance.

In the present case, there was a large amount of evidence, far more difficult of explanation than the newly discovered evidence, and yet the jury did get over it, and no earthly power could give any probable assurance, that the same result would not ensue, if a new trial should be granted. So that it would, in our judgment, be but, in effect, to give the defendant another chance to try his case, with almost the same uncertainty, as to the result, and with no rational hope, that the time would ever come, when similar grounds for a new trial could not fairly be urged by the losing party. Such grounds for a new trial are wholly insufficient, upon every basis of having an end of litigation.

Petition dismissed, with costs.

In this case, in taxing the bill of costs, the court allowed affidavits at fifty cents, although taken without notice. Where depositions were taken,—which the court consider the only legitimate evidence ·in this class of cases,—the travel and attendance of the witnesses and the taking of the depositions were allowed, as in road cases. The party recovering was allowed for the copy of the judge's minutes of the trial of the case, at a former term. Nothing was allowed for copies of the affidavits, or depositions, taken to be used upon the hearing, the court considering, that the originals alone were required to be furnished to the court. Nothing was allowed for briefs, or copies.