F. Chaffee's Sons *v.* J. W. Blanchard's Estate.

May Term, 1933.

Present: Powers, C. J., Slack, Moulton, Thompson, and Graham, JJ.

Opinion filed October 3, 1933.

443

*Lindley S. Squires* and *Stickney, Sargent & Chase* for the petitioner.

*Marvelle C. Webber* and *Lawrence C. Jones* for the petitionee.

MOULTON, J. Here we have a petition for a new trial brought by the hitherto unsuccessful defendant upon the ground of newly discovered evidence. The original proceeding was an appeal from the award of commissioners upon the defendant estate, heard in the trial court without a jury and resulting in a judgment for the plaintiffs to recover upon two promissory notes, signed by the decedent, one for $31,175.75 and the other for $250. This judgment was affirmed in this Court (105 Vt. 389, 165 Atl. 912), it being held that the notes were witnessed, thus defeating the defendant's plea of the statute of limitations. The other question raised, and decided against the defendant, was whether the trial court abused its discretion in refusing to reopen the case to permit the defendant to file an additional plea of payment, the motion to obtain this result being based upon the affidavit of S. Wayne Terrill to the effect that, at some time before the trial, Newman K. Chaffee, one of the plaintiffs, had exhibited to him a note, signed by the decedent for thirty-seven thousand and odd dollars, which was not the note produced in court, but which it is claimed was given in payment of it. This, in a little more detail, and accompanied with a similar but some-

what less positive affidavit from Bert L. Stafford, who was attorney for the defendant while the case was in the probate court, is the newly discovered evidence relied upon.

█ Without considering the question whether the requisite diligence in the discovery of the claimed newly discovered evidence has been employed, there are two reasons why this petition cannot be granted. The testimony of Mr. Terrill has already been submitted to the trial court, as a reason for allowing an amendment to the answer and reopening the case, and its action in denying the application has been sustained by this Court. True, no affidavit of Mr. Stafford was presented at that time. But what he was prepared to depose was then known to the defendant's counsel, and, if the latter desired an opportunity to introduce his testimony, he should have made it known in a proper way in his application, since he had adopted that method of procedure. As it is, the matter stands substantially as though there had been a petition for a new trial filed in the trial court, and denied there, after which the ruling so made had been affirmed. It would be an extraordinary procedure which would permit a new petition based upon the same evidence which had been presented, or, being known, might have been presented by the first petition to be thereafter preferred directly to this Court.

█ █ Furthermore, "a new trial on the ground of newly discovered evidence will not be granted unless such evidence is so controlling or so persuasive as to make it reasonably probable that it will produce a different result." Johnson v. Rule, 105 Vt. 249, 164 Atl. 681, 683. An examination of the depositions taken upon notice by each of the parties makes it clear that such is not the case here. The testimony of the executrix and her present attorneys, so far as material, only goes to show when they were actually informed of the evidence. The notes in suit were demand notes and were dated respectively March 26, 1913, and December 22, 1913. Each was typewritten on a sheet of letter size paper and contained a statement that it was secured by a certain mortgage on real estate and the pledge of certain corporate stock. On the back of each was written "Renewed, March 23, 1921, J. W. Blanchard. Witness, A. M. Burr." These indorsements were held in our former opinion in this case (105 Vt. 389, 165 Atl. 912, 913) to constitute them wit-

nessed promissory notes, so that the fourteen-year period of limitation prescribed in G. L. 1853 applied, thus preventing their outlawry at the time of the decedent's death, October 9, 1930. The testimony of Mr. Terrill is to the effect that the note exhibited to him by Mr. Chaffee was for thirty-seven thousand and odd dollars and was dated sometime in March, 1921, and payable on demand; that it was made out upon an ordinary stock form for such an obligation, much smaller than letter size paper, but whether the blanks were filled in by typewriting or script, he cannot recall; that it contained no reference to any security, but that Mr. Chaffee told him that it was secured by mortgage; and that there was nothing upon the back of it except some cancelled revenue stamps. Such a note, it is needless to state, would have become outlawed six years after the right of action upon it had accrued (G. L. 1849), and long before the decedent's death. Therefore, if the notes in suit had in truth been paid by it, the plaintiffs would now be without a remedy.

In his deposition all that Mr. Stafford says concerning the note shown to him is as follows: "I have no distinct remembrance about that (the amount of the note), except that it was in the 30's; my best recollection about it is, it was thirty-seven thousand dollars; but I have no distinct recollection of it; I paid no particular attention to the note, other than the signature; I remember that quite distinctly."

The plaintiffs took the depositions of Newman K. Chaffee and Mrs. Anna M. Burr. The former stated that he showed to Mr. Terrill the note for $31,175.75, and, he thought, the note for $250 also; that he showed both notes to Mr. Stafford; that, at the time of decedent's death, these were the only notes against him held by the plaintiffs and had been in the plaintiff's possession continuously ever since their execution; that these notes had never been paid by another note; that the decedent never gave to the plaintiffs a note for thirty-seven thousand and odd dollars; and that no such note as described by Mr. Terrill has ever been in their hands. This witness was not cross-examined. Mrs. Burr testified that from 1917 until October 6, 1922, she was employed by F. Chaffee's Sons as bookkeeper and had charge of the note files of the firm; that she had access to the file containing the Blanchard notes and from time to time examined them; that when the two notes in suit were renewed, on

March 23, 1921, she took them from the files, and at the decedent's request witnessed his signature; that up to the time she left the plaintiff's employment in 1922 there were no other notes in the file or appearing upon the books of the plaintiff; that there was at no time a note for thirty-seven and odd thousand dollars; and that she made an indorsement upon the back of the larger note as follows: "Dec. 31, 1921. Interest paid by book account to apply. $94.84."

It is truly said in the plaintiff's brief that the testimony of Mr. Terrill can be explained upon the ground of an erroneous memory; but the testimony of Mr. Chaffee and Mrs. Burr can be rejected only upon the ground of deliberate falsity. Mr. Stafford does not attempt to state more than his best recollection, which he admits to be indistinct. Indeed, the recurrence of the figure 7 in the amount of the larger note of $31,175.75, may well account for an undoubtedly honest mistake on the part of Mr. Terrill and the equally honest uncertainty of Mr. Stafford, neither of whom made any memorandum of what he had seen. Opposed, as the testimony of these two witnesses is, by the categorical denial by Mr. Chaffee and Mrs. Burr, it cannot be said that the evidence upon which the defendant relies is of a sufficiently persuasive nature to warrant any expectation of a different result upon another trial.

The inherent probabilities of the situation lend force to this conclusion. It is hardly reasonable to suppose that the plaintiff would surrender two witnessed notes, each showing upon its face that it was secured, for an unwitnessed note with no reference to any security upon it; or that, if these notes had been paid as claimed, they would not have been cancelled and delivered to the decedent; or that the latter would not have seen to it that this was done. Nor is it easy to understand why, if the larger note in suit had been discharged, there should have been an indorsement of interest paid upon it, as of December 31, 1921, some nine months after the time when it had ceased to be an outstanding obligation. In March, 1921, there was due upon the note in suit a sum in excess of $37,000 and some attempt is made to account for the divergence between the amounts then due, and "thirty-seven thousand and odd dollars," by suggesting that there is no evidence that all the credits due from the decedent to the plaintiffs had been indorsed upon the notes in

suit at the time of their witnessed renewal. But the burden of explaining the discrepancy is upon the defendants, as the petitioner for a new trial, and it avails nothing to say that there is no evidence of a fact which it is incumbent upon such petitioner to prove.

Indeed, there is no testimony directly tending to show the payment of the notes in suit, even if the existence of the note for $37,000, could be said to be reasonably probable on the evidence. We are asked to infer this fact, from the testimony that the date of the claimed instrument was "sometime in March, 1921." Nothing appears to indicate in the slightest degree whether this date was before or after March 23 of that year. If it were before, why thereafter renew the notes which had been paid, and why indorse the payment of interest on one of them? If it were after, why cancel the obligation of notes that had fourteen years to run, in exchange for one that had only six years before outlawry?

It serves no purpose to labor the point. The vagueness and easily explainable testimony on the part of the defendant, and the lack of rational basis upon which to raise the inferences pressed upon us, afford no grounds for granting this petition.

One incidental question, arising upon the taking of the depositions, remains for consideration. The defendant took the testimony of Rufus J. Blanchard, subject to an objection by the plaintiffs upon the ground that he was not one of the witnesses named in the petition, and whose affidavits were attached to it. This objection, which is again urged in this Court, is sound and the testimony of Mr. Blanchard is not properly before us in this proceeding. Supreme Court rule 4 provides that a petition for a new trial founded upon newly discovered evidence "shall have attached to and served with it the testimony on which it is founded and by which it is to be supported." Where such testimony, attached to the petition when served, is in the form of affidavits, the rule contemplates that it shall be retaken on notice in the form of depositions, to the end that the petitionee may exercise the right of cross-examination. *Johnson* v. *Rule, supra*, 105 Vt. 249, 164 Atl. 681. Since the object of the requirement that the proposed testimony shall be attached to the petition when served is to inform the petitionee of the names of the witnesses and the facts to which they will testify, so that he will

know what claims he will be obliged to meet, it follows that a witness not mentioned in the petition, and whose affidavit is not attached thereto, is incompetent later to give his deposition as evidence in chief in support of the claim. If such a witness is to be received, there must be an amendment to the petition, an affidavit from him attached to it and reasonable notice to the petitionee.

 However, to lessen the disappointment of the defendant at this holding, it may be said that the testimony of Mr. Blanchard, even if for consideration, would avail nothing. He does not profess to have seen a note for $37,000 or to have talked with Mr. Chaffee upon the subject. His deposition deals principally with what Mr. Terrill and Mr. Stafford had told him concerning the matter, and as to this it was purely hearsay. No more would it be admissible in corroboration of the testimony of those witnesses as to the existence of the note, because the sayings of a witness out of court cannot be shown to corroborate his testimony in court, except in certain cases to disprove the existence of some motive which, it is claimed, influences his testimony as given. *State* v. *Flint*, 60 Vt. 304, 316, 14 Atl. 178; *Phelps* v. *Utley*, 92 Vt. 40, 42, 101 Atl. 1011. No question involving this exception to the rule arises here.

It is unnecessary to consider the other objections to the receipt of testimony made by the plaintiffs.

*Petition for new trial dismissed with costs.*